GEORGE O. WEST, III
Nevada Bar No. 7951
Law Offices of George O. West III
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 664-1168
Email: gowesq@cox.net

E. ADAM WEBB [*Pro Hac Vice via LR IA 11-2*]
Georgia State Bar No. 743910
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, S.E., Suite 480
Atlanta, Georgia 30339
Telephone: (770) 444-0773
Email: Adam@WebbLLC.com

Attorney for Plaintiffs
MARY NAYLOR
and CHRISTOPHER NAYLOR

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| MARY NAYLOR, an individual, and CHRISTOPHER NAYLOR, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>OMNI FINANCIAL OF NEVADA, INC. d/b/a OMNI FINANCIAL and OMNI MILITARY LOANS, a Nevada Corporation,<br><br>Defendant. | Case Number:<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs bring this action pursuant to the Military Lending Act (10 U.S.C. § 987) seeking financial, declaratory, and injunctive relief for those active duty military service members and their dependents who – as a condition of obtaining installment loans from Defendant – were compelled to establish allotments to repay the loans. In support, Plaintiffs state as follows:

**JURISDICTION, VENUE, AND THE PARTIES**

1. The subject matter jurisdiction of this Court is invoked under the Military Lending Act of 2007, 10 U.S.C. § 987, and 28 U.S.C. § 1331.

2. The Court has personal jurisdiction over Defendant because Defendant is incorporated in Nevada and maintains its principal place of business at 6655 W. Sahara, Suite C104, Las Vegas, Nevada 89146.

3. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this District and a substantial portion of the events or omissions giving rise to the claim occurred in this District.

4. At all times relevant hereto, Plaintiff MARY NAYLOR was an individual consumer that has been married to, and a dependent of, Plaintiff CHRISTOPHER NAYLOR. She resides with Mr. Naylor in New Bern, North Carolina.

5. At all times relevant hereto, Mr. Naylor has been an individual consumer and a full-time active-duty member of the United States Marine Corps under a call or order that does not specify a period of 30 days or fewer. Mr. Naylor has earned the rank of Chief Warrant Officer 2 (CW02) and currently resides with his wife, Mrs. Naylor, in New Bern, North Carolina.

6. Defendant OMNI FINANCIAL OF NEVADA, INC. doing business as OMNI FINANCIAL and OMNI MILITARY LOANS ("OMNI") is an installment lender that specializes in lending to military servicembers and their dependents. Indeed, about 90% of OMNI's loans are extended to active-duty members of the armed forces.

7. OMNI's loans typically range from $500 to $10,000 over a typical term of between six and 36 months. OMNI has a national presence with offices located in Nevada, Tennessee, Georgia, North Carolina, Texas, Colorado, Washington, California, Virginia,

Kansas, and Oklahoma. OMNI originates tens of thousands of loans to active-duty members of the armed forces each year.

## GENERAL ALLEGATIONS

**A. The Military Lending Act.**

8. The United States Congress passed the Military Lending Act of 2007 ("the Act") as part of the John Warner National Defense Authorization Act for fiscal year 2007. Section 670 of the Act affords special protections to active-duty service members and their dependents concerning consumer credit transactions.

9. The Act prohibits a "creditor" from extending certain kinds of "consumer credit" to active-duty "covered members" of the armed forces and their dependents with an annual percentage rate of interest ("APR") greater than 36 percent (10 U.S.C. § 987(b)) and directs the Secretary of Defense to prescribe regulations to carry out the purpose of the Act (10 U.S.C. § 987(h)(1)). *Also* 32 C.F.R. § 232, *et seq*. (Secretary of Defense codified regulations).

10. The Act also requires creditors to provide certain mandatory loan disclosures, orally and in writing, before issuance of credit to covered members or their dependents (10 U.S.C. § 987(c)).

11. Critical to this case, the Act also provides that it is unlawful for any creditor to extend consumer credit to covered members or their dependents if the creditor "requires as a condition for the extension of credit that the borrower establish an allotment to repay an obligation" (10 U.S.C. § 987(e)(6)).

12. The Act expressly provides several penalties and remedies for creditors that violate the Act, including (a) fines or imprisonment, (b) a finding that the loan agreement violating the Act is void from its inception, and (c) civil liability for "any actual damage sustained as a result, but not less than $500 for each violation," appropriate punitive damages,

appropriate equitable and declaratory relief, other relief allowed by law, costs, and reasonable attorneys' fees. 10 U.S.C. § 987(f)(1)-(5).

13. Plaintiffs Mr. and Mrs. Naylor and the absent class members are "covered members" and "covered borrowers" subject to the protections and limitations imposed by the Act. *See* 10 U.S.C. § 987(i)(1) (defining "covered member" as "a member of the armed forces who is (A) on active duty under a call or order that does not specify a period of 30 days or less; or (B) on active Guard and Reserve Duty"); 10 U.S.C. § 987(i)(2) (defining "dependent, with respect to a covered member, [as] a person described in subparagraph (A), (D), (E), or (I) of section 1072(2) of this title"); 10 U.S.C. § 1072(2) (defining "dependent" to include a spouse); 32 C.F.R. § 232.3(g)(1) (defining "covered borrower" as "a consumer who, at the time the consumer becomes obligated on a consumer credit transaction or establishes an account for consumer credit, is a covered member or a dependent of a covered member").

14. Defendant OMNI is a "creditor" subject to the requirements and limitations imposed by the Act in that it is engaged in the business of extending consumer credit covered by the Act. 10 U.S.C. § 987(i)(5); *also* 32 C.F.R. § 232.3(i).

15. The underlying installment loan transactions at issue in this case constitute "consumer credit" subject to the protections and limitations imposed by the Act because they are "credit offered or extended to a covered borrower primarily for personal, family, or household purposes," that is both subject to a finance charge, payable by written agreement in more than four installments, and does not qualify for any of the identified exceptions. 32 C.F.R. § 232.3(f)(1); *also* 10 U.S.C. § 987(i)(6).

**B. <u>OMNI Conditions Loans on Repayment by Allotment.</u>**

16. The allotment system is run by the Department of Defense and dates back to the days before electronic bill-pay and online banking. The system allows covered members to instruct Defense Financing and Accounting Services ("DFAS") to automatically send a portion

of his or her military paycheck to other recipients. The allotment system was intended to help ensure that covered members could still meet their and their family's financial obligations while deployed or otherwise unavailable to pay bills.

17. Over the years, the allotment system has become less and less necessary as technology has given covered members and their dependents additional options to make payments automatically or remotely. For instance, covered members can set up an ACH (Automated Clearing House) transaction that allows a recipient to pull the money owed each month by using his or her bank account and routing numbers. Another option is for the covered member to instruct his or her bank to send money using bill-payment services in online banking. These options are usually free, easy to set up remotely, and easy to cancel or modify on short notice.

18. The allotment system has several downsides for covered members that these newer automatic payment options do not possess, such as:

(a). **Increased Cost.** Setting up automatic ACH payments using a personal bank account is usually free, while in the case of allotments there are often third-party processors handling the payment that charge one or more fees;

(b). **Less flexibility in a financial emergency.** With an allotment, the money is paid out by DFAS before the covered member's pay gets sent to his or her bank, which means he or she has less flexibility to adjust their budget in a financial emergency;

(c). **Loss of some legal protections.** With a few exceptions, if an electronic payment that the covered member did not authorize is sent from his or her bank account, and timely notice is provided, he or she is not liable. With an allotment, since the payment is not coming from a bank account, the covered member does not have such protection; and

(d). **Lack of transparency.** In order to process an allotment, lenders sometimes set up a separate bank account to receive the payment from DFAS. The covered

member may not understand how this other account works, or that there may be a variety of fees associated with it, including service fees and other fees associated with reclaiming overpayments to the account.

19. On the contrary, the allotment system is all upside for lenders like OMNI because payment to the lender is automatically withdrawn directly from a paycheck and thus all but guaranteed. Indeed, covered borrowers who repay through allotment have much lower delinquency and default rates than those that pay by other means.

20. Because those that repay through allotment are less likely to pay late or default, OMNI established a systemic process whereby its provision of loans to covered members and their dependents was conditioned upon the applicants agreeing to repay by allotment.

21. Indeed, such loan applicants were instructed by OMNI to arrange the allotment through the DFAS and provide proof to OMNI as a condition of receiving a loan.

22. This automated process has resulted in approximately ***99 percent*** of OMNI military borrowers repaying their loans by allotment.

23. OMNI's actions in this regard are a direct violation of Section 987(e)(6) of the Act.

**C. The CFPB Action.**

24. The Consumer Financial Protection Bureau ("CFPB") recently investigated OMNI's actions and informed OMNI that it intended to bring an enforcement action for OMNI's violation of the Act and other federal consumer protection laws. On December 21, 2020, OMNI stipulated to the issuance of a Consent Order to resolve the action. *See* Stipulation (Exh. A hereto).

25. This Consent Order, dated December 28, 2020, set forth the CFPB's stipulated findings of fact, including that since October of 2016 "[OMNI] employees tell the Covered Members that in order to get the loan they must repay by allotment" (*see* Consent Order, ¶ 10),

such covered members "have been harmed in the amount of interest and fees paid because they were wrongfully deprived of the option to pay by means other than allotment" (*id.* at ¶ 12), and "[OMNI] violated the [Act][,] 10 U.S.C. § 987(e)(6)" (*id.* at ¶ 13).

26. The Consent Order also, among other things, (a) enjoined OMNI from conditioning future loans to covered members on repayment by allotment (*id.* at ¶ 23), (b) required OMNI to inform existing borrowers that they can repay using a different method (*id.* at ¶ 24), (c) precluded OMNI from accepting loan repayment by allotment unless specifically authorized *after* disclosing allotment is optional (*id.* at ¶ 26), (d) required OMNI to train its loan origination employees that allotment is optional (*id.* at ¶ 27), and (e) prohibited OMNI from incentivizing employees to obtain allotment authorization (*id.* at ¶ 28).

27. The Consent Order also required OMNI to pay a civil monetary penalty of $2,175,000 to the CFPB. *Id.* at ¶ 36. The Consent Order did ***not***, however, afford any monetary relief to those covered members and dependents that have been victimized by OMNI's violations of the Act. However, the Consent Order clearly contemplated that such an action would be brought.

28. Indeed, the Order bars OMNI from claiming an offset or reduction in any such case "because of the civil money penalty paid in this action." *Id.* at ¶ 40. The Consent Order further requires OMNI to notify the CFPB of any "final judgment, consent order, or settlement in a Related Consumer Action . . . [noting] the amount of redress, if any, that [OMNI] paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has or will be paid." *Id.* at ¶ 44.

29. This action seeks to fill the gap left by the CFPB Consent Order by obtaining needed monetary, declaratory, and injunctive relief for those covered members and their dependents, like Plaintiffs Mr. and Mrs. Naylor, who had loans conditioned on repayment by allotment.

## INDIVIDUAL ALLEGATIONS

30. On several occasions over the last few years, the Naylors found themselves in a financial bind and needed small loans to cover mounting personal, family, and household expenses.

31. They have often consulted OMNI to obtain such loans. On each occasion, OMNI required Mr. Naylor to provide proof of his active-military status by forwarding records such as his LES (leave and earning statement) and BIR (basic individual record), as well as proof of identification.

32. On at least six prior occasions since July of 2018, OMNI has loaned the Naylors funds ranging in amount from $1,000 to $9,000 on the condition that the loans be repaid via allotments from Mr. Naylor's military paycheck.

33. Aside from the first loan in July of 2018, most of the funds from each successive loan were used to pay off the prior OMNI loan. The Naylors never received more than $2,700 in cash from any individual OMNI loan.

34. OMNI was very clear that the much needed funds would not be loaned unless an allotment was established. Thus, the Naylors had no choice but to repay via allotment.

35. The Naylors did not know the Act prohibited OMNI from requiring them to re-pay loans by allotment but trusted that a company that specialized in military loans, and marketed itself as looking out for and helping service members, was following the law. The Naylors would have chosen other repayment methods if they had been given the option to do so. ACH, automatic bill pay, and writing checks were all viable options.

36. On each occasion, prior to providing the Naylors with the funds, OMNI provided the Naylors with the amount of the monthly payment and its bank account information (which was always a Bank of America account) and instructed the Naylors to arrange for an allotment with the DFAS and then provide evidence that the allotment had been successfully established.

OMNI instructed the Naylors to take dated screenshots of Mr. Naylor's allotment page from the mypay.dfas.mil website and upload or send them electronically to OMNI. Upon receiving this evidence, OMNI would then provide the funds.

37. On multiple occasions over the last few years, the Naylors have had financial emergencies and needed to use the funds they owed to OMNI for other, more pressing concerns. However, because the funds had been allotted to OMNI, they lost the flexibility to use these funds even though they had the legal and contractual right to use the funds for other purposes.

38. By way of example, in 2020, the Naylors' son lost his job due to the COVID-19 crisis and was in desperate need of financial assistance from his parents to cover his living expenses. The Naylors could not simply take their monthly $350.00 OMNI loan repayment and give it to their son because of the allotment.

39. Mrs. Naylor called OMNI and asked if they could cancel or defer the allotment for two months or obtain an extension on the loan so they could use the funds to help their son. OMNI responded that cancelling the allotment and deferring payment was not an option and their only choice was to obtain another loan and take on more debt. Out of options, the Naylors were forced to apply for a new loan with OMNI in July of 2020 so they could help their son.

40. Had the loan not been conditioned on repayment by allotment, the Naylors could have simply not paid OMNI (and dealt with the consequences). This was their choice to make. But because of OMNI's unlawful allotment requirement, they lost this financial flexibility. They are also not able to take advantage of legal protections associated with unauthorized electronic payments that the allotment system does not provide.

///

///

///

**CLASS ALLEGATIONS**

41. Plaintiffs bring this action on behalf of themselves and all others similarly situated. The Class is preliminarily defined as: "All covered borrowers who obtained an installment loan from OMNI that was conditioned upon establishing an allotment for repayment."

42. Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers, and directors; any entity in which Defendant has a controlling interest; all customers who make a timely election to be excluded; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

43. The time period for the Class is five years immediately preceding the filing date of this action.

44. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can meet all the applicable requirements of Federal Rule of Civil Procedure 23 and can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

45. *Numerosity*. The members of the Class are so numerous that individual joinder of all the members is impracticable. Over the past five years, OMNI has issued tens-of-thousands of loans to covered borrowers that were conditioned upon repayment by allotment. The precise number of Class members and their addresses is presently unknown to Plaintiffs but can readily be ascertained from OMNI's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, and/or published notice.

46. *Commonality and Predominance*. Numerous common questions of law and fact exist as to the claims of Plaintiffs and the other Class members. Such questions include, but are not limited to:

(a). Whether Plaintiffs and the class members are "covered members," "dependents," and "covered borrowers" subject to the protections and limitations of the Act;

(b). Whether Defendant is a "creditor" subject to the requirements and limitations of the Act;

(c). Whether Defendant's installment loans are "consumer credit" subject to the protections and limitations of the Act;

(d). Whether Defendant conditioned its installment loans on the establishment of an allotment to repay the loans;

(e). Whether Defendant's installment loans to covered borrowers are unlawful and void from inception; and

(f). Any declaratory and/or injunctive relief to which the Class is entitled.

47. Defendant has engaged in a common course of conduct toward Plaintiffs and the other Class members. The common issues arising from this conduct that affect Plaintiffs and the other Class members predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

48. *Typicality*. Plaintiffs' claims are typical of the other Class members' claims because, among other things, all of the claims arise out of a common course of conduct and assert the same legal theories. Further, Plaintiffs and members of the Class were comparably injured through the uniform misconduct described above.

49. *Adequacy of Representation*. Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members; Plaintiffs have retained counsel competent and experienced in consumer class action litigation; and Plaintiffs intend to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

50. *Declaratory and Injunctive Relief.* Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive and declaratory relief, as described below.

51. *Superiority*. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and each of the other Class members are small compared to the burden and expense that would be required to individually litigate their claims against Defendant, thus rendering it impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**COUNT I**

**VIOLATION OF THE MILITARY LENDING ACT**

52. Plaintiffs re-allege and incorporate by reference the above-enumerated paragraphs of this Class Action Complaint as though fully restated herein.

53. OMNI violated the Act and its implementing regulations by conditioning the extension of consumer credit to Plaintiffs and the other Class members upon the establishment of an allotment to repay the obligations. 10 U.S.C. § 987(e)(6); 32 C.F.R. § 232.8(g).

54. Plaintiffs and the other Class members suffered substantial harm proximately caused by OMNI as a result of its violations of the Act and will continue to suffer harm unless and until the relief requested herein is granted.

## COUNT II

## UNJUST ENRICHMENT AND MONEY HAD AND RECEIVED

55. Plaintiffs re-allege and incorporate by reference the above-enumerated paragraphs of this Class Action Complaint as though fully restated herein.

56. Through the receipt of interest charges imposed on the subject installment loans at issue in this case, OMNI has been unjustly enriched through the receipt of Plaintiffs' and the other Class members' payments of such sums, which, in equity and good conscience, it ought not be entitled to retain.

57. Plaintiffs and the other Class members have paid, and OMNI has received, money representing payments on unlawful loans which, in equity and good conscience, they have no right to retain.

58. Plaintiffs and the other Class members are entitled to a return of the monies they paid on such illegal loans, plus interest thereon.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, seek:

(a) a declaration from the Court that Plaintiffs and the other class members are "covered borrowers" subject to the protections and limitations of the Act;[1]

(b) a declaration from the Court that Defendant is a "creditor" subject to the requirements and limitations of the Act;

(c) a declaration from the Court that the installment loans at issue are "consumer credit" transactions subject to the protections and limitations of the Act;

---

[1] This controversy is ripe for judicial decision and declaratory relief is necessary and appropriate so that the parties may know the legal obligations that govern their present and future conduct and the merit of this litigation.

(d) a declaration from the Court that Defendant has violated the Act by conditioning its extension of credit to covered borrowers on the establishment of an allotment for purposes of repayment;

(e) a declaration from the Court that the installment loans made in violation of the Act are unlawful and void from their inception;

(f) preliminary and permanent injunctions forbidding Defendant from collecting anything further from Plaintiffs and the Class on the void installment loans;

(g) compensatory damages, with interest, in an amount of at least $500 per violation of the Act;

(h) a return of the monies paid on the void installment loans, with interest;

(i) punitive damages in an amount sufficient to punish and deter Defendant from conditioning its provision of installment loans on repayment by allotment in violation of the Act;

(j) costs of the action;

(k) reasonable attorneys' fees as determined by the Court; and

(l) such other and further relief that the Court deems just and proper under the circumstances.

DATED: February 18, 2021

GEORGE O. WEST, III, Attorney at Law

By: _/s/ George O. West III_
GEORGE O. WEST, III

Attorney for Plaintiffs MARY NAYLOR and CHRISTOPHER NAYLOR

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury of all claims so triable.

DATED: February 18, 2021

GEORGE O. WEST, III, Attorney at Law

By: */s/ George O. West III*
GEORGE O. WEST, III

Attorney for Plaintiffs MARY NAYLOR and CHRISTOPHER NAYLOR